**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**W. GREG VOGEL,**

    **Plaintiff,**

**v.**                                          **CASE NO.:**  2:18cv361

**CITY OF VIRGINIA BEACH,**

    **Defendant.**

**SERVE:**  Mark D. Stiles, Esq.
         Virginia Beach City Attorney
         City of Virginia Beach
         2401 Courthouse Drive
         Virginia Beach, VA 23456

**COMPLAINT**

COMES NOW, W. Greg Vogel ("Plaintiff"), by counsel, and respectfully moves this Honorable Court for a judgment declaring the rights of the Plaintiff against, by and between the Defendant City of Virginia Beach ("Defendant"), pursuant to 28 U.S.C. § 2201 with the cost of this action and attorneys' fees.

**PARTIES**

1. The Plaintiff is a firefighter employed by the City of Virginia Beach holding the rank of Master Firefighter/Paramedic, having served nearly thirteen years as a member and employee of the Virginia Beach Fire Department. He has served with the National Urban Search and Rescue Response System since 2008 as will be set forth in further detail below.

2. The City of Virginia Beach is a municipal corporation, a political subdivision of the Commonwealth of Virginia which maintains a Fire Department as part of its operations and the Plaintiff is employed as a member of such department.

## **JURISDICTION AND VENUE**

3. This action arises out of an actual controversy between the Plaintiff, and similarly situated individuals, and the Defendant regarding the compensation Plaintiff is entitled to receive in accordance with 44 C.F.R. Part 208, and the extent of monetary reimbursement the Defendant is entitled to receive from the Federal Emergency Management Agency ("FEMA") for payment made to the Plaintiff while the Plaintiff is deployed or activated as a System Member with the National Urban Search and Rescue Response System.

4. This action presents a federal question pursuant to 28 U.S. Code § 1331 inasmuch as federal law and regulations specifically, 44 C.F.R. Part 208 create a cause of action and the court is requested herein to enter judgment regarding the respective rights and responsibilities of the parties as the result of an actual controversy as set forth below.

5. 28 U.S. Code § 2201 specifically empowers the Court to declare the rights and legal relations of the interested parties in this case in light of the actual case and controversy presented as the result of the interpretation of 44 C.F.R. Part 208 and related sections by Defendant by City of Virginia in relation to the Plaintiff and other similarly situated members in connection with the Joint Task Force as a System member with the National Urban Search and Rescue Response System.

6. As set forth below, the City of Virginia Beach, acting through its Fire Department, has acted in violation of the intent and purpose of the above 44 C.F.R. Part 208 in its treatment of and compensation of the Plaintiff and others similarly situated and the Court is asked pursuant to its well stated power as set forth in 28 U.S. Code § 2201 and 28 U.S. Code §1331 to declare the rights and responsibilities of the respective parties in a circumstance of actual controversy.

## COUNT I
## REQUEST FOR DECLARATORY RELIEF

7. On December 18, 2002, the Federal Emergency Management Agency ("FEMA") published the National Urban Search and Rescue Response System. On March 1, 2003, FEMA became a part of the Emergency Preparedness and Response Directorate ("EP&R"), Department of Homeland Security ("DHS"). The National Urban Search and Rescue Response System then became a program in FEMA under the EP&R Directorate.

8. On February 24, 2005, FEMA introduced 44 C.F.R. Part 208 as an interim rule intended to standardize the financing, administration, and operation of the National Urban Search and Rescue Response System ("the System"). National Urban Search and Rescue Response System, 70 Fed. Reg. 36 (Feb. 24, 2005) (codified at 44 C.F.R. pt. 208).

9. At all times relevant herein, 44 C.F.R. Part 208 governed, and continues to govern, the rights, duties, and responsibilities of the Defendant as it pertains to reimbursement for compensation to System Members, including but not limited to the Plaintiff, when deployed or activated with the System.

10. The System was created in consultation with State emergency management agencies and local public safety agencies, and around a core of Sponsoring Agencies prepared to deploy US&R Task Forces immediately and initiate US&R operations at DHS's direction.

11. Task Forces are staffed primarily by local fire department and emergency services personnel specially trained and experienced in collapsed structure search and rescue operations, incident management, and other emergency operation activities.

12. To avoid burdening local fire departments with the cost of providing emergency services outside of their respective jurisdictions, Sponsoring Agencies are compensated for personnel costs during Activations. 44 C.F.R. § 208.39 (2018).

13. At all times relevant herein, the Defendant, by and through the Virginia Beach Fire Department, has been a Sponsoring Agency.

14. The purpose of the National Urban Search and Rescue Response System is to provide specialized lifesaving assistance during major disasters or emergencies that the President declares under the Stafford Act.

15. Upon activation by DHS, System Members operate as *Temporary Excepted Federal Volunteers*. This means that a System Member's status is *temporary* for the period of federal activation, *excepted* from civil service rules regarding Federal employment, *Federal* for purposes of tort claim protection and Federal workers compensation, and a *volunteer* in that DHS does not pay the individual System Members directly, but instead, DHS reimburses the Sponsoring Agency for the System Member's services.

16. In the event that a Sponsoring Agency's System Member is activated for Federal deployment, the Sponsoring Agency or Participating Agency shall seek reimbursement for personnel costs during Activations from DHS by submitting a reimbursement claim after the Sponsoring Agency compensates the System Member. This is intended to prevent a break in a System Member's pay, service, and, consequently, benefits associated with his continued status as an employee of the Sponsoring Agency.

17. To maintain the existing employment relationship between a System Member and a Sponsoring Agency, the System Member shall receive "Base Pay"[1] from the Sponsoring Agency or Participating Agency, which amounts to the same pay or benefits the System Member would have received if he was not Activated, as stated and instructed by DHS: "While on Federal deployment, these System Members receive pay and benefits from their usual employers during the Federal deployment just as they would if they were not Activated." National Urban Search and Rescue Response System, 70 Fed. Reg. 36, 9184 (Feb. 24, 2005) (codified at 44 C.F.R. pt. 208).

18. FEMA and DHS intended to create a concurrent employment relationship between the Sponsoring Agencies or Participating Agencies and the System. "The maintenance of this concurrent employment relationship is a fundamental principle of the National US&R Response System, and dates from the inception of the System." National Urban Search and Rescue Response System, 70 Fed. Reg. 36, 9184 (Feb. 24, 2005) (codified at 44 C.F.R. pt. 208).

19. Therefore, in accordance with FEMA's interpretation of 44 C.F.R. § 208.39, "System Members who are regularly employed by a Sponsoring Agency or Participating Agency retain their concurrent employment relationship with their usual employers." National Urban Search and Rescue Response System, 70 Fed. Reg. 36, 9184 (Feb. 24, 2005) (codified at 44 C.F.R. pt. 208).

20. The System's rules for compensation of System Members, and associated reimbursement to Sponsoring Agencies[2] and Participating Agencies, is intended to incentivize

---

[1] Base Pay is the pay a System Member would receive for a given week or pay period if he or she was not Activated for Federal deployment under the System.
[2] Sponsoring Agencies are State or local government agencies that have signed Memoranda of Agreement with DHS to organize and manage US&R.

cooperation and participation with the System, in an effort to maximize the resources available to FEMA in the event of a major disaster or emergency that the President declares under the Stafford Act.

21. DHS reimburses Sponsoring Agencies, including the Defendant, by and through the Virginia Beach Fire Department, for 24 hours of pay for each day that a System Member is deployed, beginning from the moment the System Member arrives at the Point of Assembly,[3] or some other designated point, until his or her release from duty. Release from duty may be at the airport or Air Force Base to which the Task Force returns, or some other point. This reimbursement procedure is known as "portal to portal" pay.

22. Portal to portal pay for regular wages and overtime wages requires that System Members receive compensation for their regular hourly wage for the first forty hours, and one and one-half times the hourly wage for every hour of Activation after the first forty hours. A System Member's regular hourly wage is calculated by converting the System Member's normal and customary hourly wage to an hourly wage that aligns with a forty hour work week.[4]

23. DHS instructs the Sponsoring Agencies, including the Defendant, by and through the Virginia Beach Fire Department, to claim reimbursement for regular wages and overtime wages as described in 44 C.F.R. § 208.38(d), (e), and (f). This instruction is not intended to create a windfall for Sponsoring Agencies because an agency cannot charge DHS for personnel costs in excess of those that they actually and normally incur.

---

[3] The Point of Assembly is the location where a Task Force assembles before departure in response to an activation order.

[4] For example, the Plaintiff's normal and customary rate of pay is based upon a fifty-six hour work week. This fifty-six hour rate of pay is converted to a forty hour work week to determine his regular hourly rate of pay when Activated.

24. To prevent an additional cost burden on the Sponsoring Agencies or Participating Agencies for paying for a System Member's Base Pay while on deployment, 44 C.F.R. § 208.39(g) provides for the additional reimbursement of Backfill[5] expenses.

25. If a public safety agency ordinarily Backfills a position in situations where a regular employee is unavailable, the public safety agency may bill DHS for the cost of Backfilling the position for the period that the regular employee is away on a Federal deployment.

26. At all times relevant herein, the Plaintiff, as an employee of the City of Virginia Beach by and through the Virginia Beach Fire Department, and a *Temporary Excepted Federal Volunteer* within the System, held two separate positions entitling the Plaintiffs to pay for each position upon activation to the System.

27. The System's compensation calculation rules are guided by two fundamental principles: (1) Cost neutrality; and (2) Customary and usual practice. The rules provide for reimbursement to the Sponsoring Agency for the amount that the individual System Member would have customarily and usually received (i.e. Base Pay), as well as the regular wages and overtime wages.

28. Beginning in 1993, employees of the Defendant, by and through the Virginia Beach Fire Department, were informed of an opportunity to join the System as Task Force System Members. Prior to their involvement in the System, employees of the Virginia Beach Fire Department were required to interview with existing Task Force System Members. Those selected to participate in the System completed an internal employment application that considered the potential System Member's certifications, resume, and required the approval of

---

[5] Backfill means the personnel practice of temporarily replacing a person in his or her usual position with another person.

the potential System Member's chain of command. An employment application which was separate and distinct from their employment application with the City of Virginia Beach or the Virginia Beach Fire Department, which included pages titled "Optional Application for Federal Employment," "Declaration for Federal Employment," and "Urban Search and Rescue Task Force Employee Transmittal Sheet" was then submitted to FEMA.

29. At all times relevant herein, Plaintiff, as an employee of the Defendant, by and through the Virginia Beach Fire Department, received regular pay at a fifty-six hour per week rate, as well as any additional overtime wages. Plaintiff's regular pay for the first fifty-six hours worked while "at home" equals his customary and normal Base Pay.

30. At all times relevant herein, the Plaintiff participated as a System Member of these Task Forces.

31. At all times relevant herein, the Plaintiff, when activated by the System and on deployment with a Task Force, should receive Base Pay, regular wages and overtime wages from the Defendant, by and through Virginia Beach Fire Department, which the Defendant, by and through the Virginia Beach Fire Department, may later claim as a reimbursement from DHS.

32. From 2006 to 2011, the Defendant, by and through the Virginia Beach Fire Department, appropriately began converting the Plaintiff's 56 hour per week hourly rate to 40 hours per week. However, the Virginia Beach Fire Department calculated the Plaintiffs compensation based upon a Monday through Friday, 8:00 am to 4:00 pm work schedule, while deployed with the System, which is contrary to the requirement that the System Members receive compensation for every hour of Activation.[6] Additionally, the Defendant did not compensate the Plaintiff for the 40 hours of activation from 8:00 am to 4:00 pm, claiming this pay was a "wash"

---

[6] Once deployed, all System Members must be available for immediate response twenty-four hours a day during the entire deployment period.

due to the Plaintiff's employment with the Defendant. This resulted in the Plaintiff only receiving overtime compensation while on deployment. The Plaintiff's total deployment compensation was reduced due to the Defendant's improper calculation of Base Pay, straight time hours, and overtime hours.

33. In 2015, the Plaintiff was deployed for 192 hours in response to Hurricane Joaquin. While on deployment, the Defendant, by and through the Virginia Beach Fire Department, properly converted the Plaintiff from a 56 hour per week rate of pay to a 40 hour per week rate of pay, however the Defendant withheld compensation for the Plaintiff's first forty hours of straight time deployment, and ultimately only compensated the Plaintiff for 128 hours of overtime deployment. This resulted in the Plaintiff receiving pay for 128 hours of his 192 hours of deployment. The Plaintiff brought this disparity to the Defendant's attention, and the Defendant ultimately compensated the Plaintiff for an additional 24 hours of deployment (bringing his total hours of compensation to 152 hours), but the Defendant continued to refuse to pay the Plaintiff's for his first 40 hours of deployment. The Defendant justified its position by stating the first 40 hours of deployment amounted to a "wash."

34. Upon information and belief, in 2016, the Defendant implemented an internal FEMA Pay Policy, which memorialized the Defendant's position to calculate the Plaintiff's deployment compensation, and other similarly situated individuals, based upon a seven day calendar reset. This resulted in the improper calculation of straight time hours and overtime hours while on deployment.

35. In 2017, the Defendant began calculating reimbursements from the DHS by converting the Plaintiffs' at home 56 hour per week rate of pay to a 40 hour per week rate of pay and calculating the hours of pay pursuant to the portal to portal requirement, which requires that

9

the Plaintiffs be compensated for every hour of deployment from their arrival to a Point of Assembly until their departure from the Point of Assembly. The Defendant implemented its FEMA Pay Policy which improperly calculated the Plaintiff's work week based upon a seven day calendar, rather than the 168 hour requirement pursuant to the System. The Defendant corrected its calculation only after the Plaintiff confronted the Defendant with its inaccuracies. This resulted in the Defendant properly calculating the Plaintiff's activation hours and compensation for those hours, however, the Defendant continued the practice of deducting the Plaintiff's Base Pay from the Plaintiffs total wages earned while deployed with the System. This deduction appeared as a line item deduction on the Plaintiff's pay stub, and resulted in the Plaintiff not receiving pay or compensation for his regular employment with the Defendant for the time of deployment.

36. This practice of deduction is contrary to the guidelines, rules, and intentions as established by 44 C.F.R. Part 208. Beyond the injustice of wrongfully withholding pay from an individual, by withholding the Plaintiff's Base Pay, the Defendant jeopardizes the Plaintiff's benefits of employment, which 44 C.F.R. Part 208 explicitly aimed to prevent by establishing a concurrent employment relationship to "prevent System Members from suffering a break in their service to the usual employer while away on Federal deployment." National Urban Search and Rescue Response System, 70 Fed. Reg. 36, 9184 (Feb. 24, 2005) (codified at 44 C.F.R. pt. 208).

37. The concurrent nature of employment between the Defendant and the System entitles the Plaintiff to Base Pay, plus an amount equal to his converted hourly wage for the first forty hours of straight time while activated, plus his converted hourly overtime wage multiplied by the number of hours spent activated with FEMA until the activation ends.

38. The Defendant may choose whether or not to seek full reimbursement for its personnel costs during a Federal deployment activation period, but the Plaintiff's pay or compensation shall not be affected, deducted, reduced, or compromised by the Defendant's decision to properly or improperly seek reimbursement.

39. The Plaintiff informed the Defendant of the improper nature of the deductions from his pay, but the Defendant refused to change its practices. The Plaintiff subsequently informed the Defendant that neighboring Participating Agencies currently seek and receive reimbursement in the form that is being sought by this Action. These neighboring Participating Agencies include, but are not limited to, the City of Williamsburg, James City County, the City of Newport News, and the City of Portsmouth. Despite this information, the Defendant refused to change its practices, and continues to withhold pay to which the Plaintiff is entitled to.

40. By continuing to withhold, deduct, and/or reduce the Plaintiff's pay after his deployment with the System, the Defendant is effectively punishing the Plaintiff for his participating in a function of society that benefits those individuals and localities that need his help the most. This deduction and/or withholding of pay runs afoul of the clear intentions of the Department of Homeland Security and FEMA to encourage individual participation by incentivizing the involvement in the System, without burdening localities, such as the Defendant, with the burden of the costs associated with a System Member's involvement. National Urban Search and Rescue Response System, 70 Fed. Reg. 36, 9184 (Feb. 24, 2005) (codified at 44 C.F.R. pt. 208).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff moves this Court for a judgment declaring Plaintiff's right, as enumerated by 44 C.F.R. Part 208, to pay for his service with the System, separate and apart from his pay for his regular employment with the Defendant, which is to be paid by the Defendant, whom shall be reimbursed for such personnel costs pursuant to 44 C.F.R. Part 208, with the cost of this action and attorneys' fees.

                    W. GREG VOGEL

By: /s/ Michael F. Imprevento
    Michael F. Imprevento, Esq. (VA State Bar #23926)
    Kevin Biniazan, Esq. (VA State Bar #92109)
    mimprevento@breitdrescher.com
    kbiniazan@breitdrescher.com
    BREIT DRESCHER IMPREVENTO
    600 22nd Street, Ste. 402
    Virginia Beach, VA 23451
    (757) 622-6000 (Office)
    (757) 670-3895 (Fax)
    *Counsel for Plaintiff*