IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**W. GREG VOGEL,**

    **Plaintiff,**

        **v.**                                 **CIVIL NO. 2:18-cv-361**

**CITY OF VIRGINIA BEACH,**

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court on motion of the defendant, the City of Virginia Beach, to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction ("Motion to Dismiss"). ECF No. 5. For the reasons set forth herein, the defendant's Motion to Dismiss is **GRANTED**.

## I.    PROCEDURAL HISTORY

On July 6, 2018, Plaintiff, a firefighter employed by the City of Virginia Beach ("City" or "Defendant"), commenced this declaratory judgment action against the City pursuant to 28 U.S.C. § 2201, stemming from Plaintiff's deployment as a federal task force member with the National Urban Search and Rescue Response System during certain natural disasters. ECF No. 1. Plaintiff does not seek damages. In his complaint, Plaintiff alleges that the City does not properly compensate firefighters, like himself, when they are deployed with the National Urban Search and Rescue Response System, and he asks the Court to declare that, pursuant to 44 C.F.R. Part 208, while federally deployed, he should be paid his normal wages as a firefighter with the City in addition to special deployment wages. Id.

On July 30, 2018, the City moved to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction ("Motion to Dismiss").

1

ECF No. 5; see Memorandum in Support ("Mem."), ECF No. 6.  On August 13, 2018, Plaintiff

filed a response in opposition to the City's Motion to Dismiss.  ECF No. 7.  On August 20, 2018,

the City filed its reply.  ECF No. 9.  On Plaintiff's request, ECF No. 7, the parties appeared

before the Court for oral argument on such motion on October 4, 2018.

## II.    LEGAL STANDARD

The City moves to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal

Rules of Civil Procedure ("Rule 12(b)(1)").  ECF No. 5.  Where, as here, a defendant makes a

facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same

procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns v. United

States, 585 F.3d 187, 192 (4th Cir. 2009) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.

1982)).  In such cases, "the facts alleged in the complaint are taken as true, and the motion must

be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns,

585 F.3d at 192.

"'[F]ederal courts are courts of limited jurisdiction,' constrained to exercise only the

authority conferred by Article III of the Constitution and affirmatively granted by federal

statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998) (quoting Owen Equip.

and Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)).  A court must "presume . . . that a case

lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper."

United States v. Poole, 531 F.3d 263, 274 (4th Cir. 2008) (citing Kokkonen v. Guardian Life Ins.

Co. of Am., 511 U.S. 375, 377 (1994)).

Pursuant to what is called federal question jurisdiction, "[t]he district courts shall have

original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

United States." 28 U.S.C. § 1331.  "In determining whether an action presents a federal question

under Section 1331, a court must first discern whether federal or state law creates the cause of

action." Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994). "In cases where federal law creates the cause of action, the courts of the United States unquestionably have federal subject matter jurisdiction." Id. (emphasis in original) (citation omitted). If, however, state law creates the cause of action, a federal court only has jurisdiction where such claim necessarily raises a federal issue that is "actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

In addition, "[t]he well-pleaded complaint rule requires that federal question jurisdiction not exist unless a federal question appears on the face of a plaintiff's properly pleaded complaint." Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 370 (4th Cir. 2001). Such rule "operates no differently when the jurisdictional issue is whether a district court possesses subject matter jurisdiction of a declaratory judgment action purporting to raise a federal question." Id. (citations omitted). To raise a federal question in such cases, a complaint must either "assert an affirmative cause of action arising under federal law" or "allege[] a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff." Id. (citing, e.g., TTEA v. Ysleta del Sur Pueblo, 181 F.3d 676, 681 (5th Cir. 1999)).

## III.   FACTUAL BACKGROUND[1]

Plaintiff has been employed as a firefighter by the City for approximately thirteen years. Compl. ¶ 1. Since 2008, while employed as a City firefighter, Plaintiff has been deployed as a federal task force member ("Member") with the Federal Emergency Management Agency's

---

[1] Because the City makes a facial challenge to the Court's subject matter jurisdiction, the well-pleaded facts in Plaintiff's complaint are taken as true. Kerns, 585 F.3d at 192.

("FEMA") National Urban Search and Rescue Response System ("US&R System" or "the System") during certain natural disasters. Id. ¶¶ 1, 3. FEMA's US&R System is part of the Emergency Preparedness and Response Directorate of the Department of Homeland Security ("DHS"). Id. ¶ 7. The purpose of the System is to provide specialized lifesaving assistance during major disasters or emergencies declared by the President under the Stafford Act, 42 U.S.C. § 5121 et seq. Id. ¶ 14.

The US&R System operates around a core of state and local "Sponsoring Agencies," which deploy US&R task forces to carry out emergency services at the direction of DHS during disasters or emergencies. Id. ¶ 10. Such task forces are staffed primarily by local fire department and emergency services personnel who have specific training and experience in collapsed-structure search and rescue operations, incident management, and other emergency operation activities. Id. ¶ 11. At all times relevant to the complaint, "the [City], by and through the Virginia Beach Fire Department, has been a Sponsoring Agency" in the System. Id. ¶ 13.

## 44 C.F.R. Part 208

On February 24, 2005, FEMA introduced 44 C.F.R. Part 208 to prescribe policies and procedures applicable to Sponsoring Agencies and other participants in the System. Compl. ¶ 9; see 44 C.F.R. § 208.1. Subpart C of this regulation sets forth how DHS will reimburse Sponsoring Agencies for the costs of participating in the System, including the cost of deploying System Members like Plaintiff during Activations. See generally 44 C.F.R. § 208.31–208.46. The stated goal of this subpart is cost neutrality: "DHS policy is that an Alert or Activation should be as cost neutral as possible to Sponsoring Agencies and Participating Agencies." Id. § 208.33(a). Therefore, DHS will reimburse "all reasonable, allowable, necessary and allocable costs that a Sponsoring Agency or Participating Agency incurs during the Alert or Activation."

4

Id. Such reimbursement is limited to those costs "actually incur[red]" and may not result in a windfall to any Sponsoring Agency. Id. § 208.33(b).

With respect to personnel costs, this regulation provides for reimbursement for the costs of compensating Activated[2] System Members during Activations. 44 C.F.R. § 208.39(a). It also sets forth certain policies for compensating Activated System Members during Activation to ensure that these individuals are amply rewarded for their service to the System at no additional cost to the Sponsoring Agencies. For instance, when calculating the reimbursable Activation compensation for a salaried Non-Exempt System Member, a Sponsoring Agency must convert the Member's normal salary to its hourly equivalent for a 40-hour work week. Id. § 208.39(e). Then, for each seven-day period of Activation, DHS will reimburse such Sponsoring Agency for the costs of compensating the Activated System Member using this converted hourly rate for the first 40 hours plus the costs of paying such Member overtime wages for every hour over 40. Id. § 208.39(e)(5). Additionally, Activated System Members are considered to be on active duty 24 hours per day during Activation. Id. § 208.39(c). Therefore, an Activated System Member will exceed 40 hours of work in just two days of Activation.

## Plaintiff's Claims

Plaintiff alleges that Activated System Members maintain their existing employment relationship with a Sponsoring Agency during Activation and should receive their normal salary during that time. Compl. ¶¶ 16, 17. In other words, Plaintiff claims that each time he is Activated by the System and federally deployed with a US&R task force, the City must compensate him with his base pay – that is, the pay owed to him by his employer had he not been Activated ("Base Pay") – plus his deployment wages, which includes for each seven-day

---

[2] A System Member is considered "Activated" whenever such Member is "placed at the direction, control and funding of DHS in response to, or in anticipation of, a presidential declaration of a major disaster or emergency under the Stafford Act." 44 C.F.R. § 208.2(a).

period of deployment an hourly wage for the first 40 hours of Activation and overtime wages for each hour after 40, as set forth above. Compl. ¶¶ 22, 23, 32 n.6. However, Plaintiff claims that the City has repeatedly failed to pay Activated System Members their Base Pay during Activations even though DHS would allegedly reimburse the City for such costs under 44 C.F.R. §208.39. Id. ¶¶ 32–35.

To illustrate, if a System Member is federally deployed for five days, Plaintiff argues that such Member is entitled to receive his normal pay as a City firefighter for those five days plus his deployment wages for those five days (that is, 120 hours, which is based on a 24-hour work day), which includes normal hourly wages for the first 40 of these 120 hours plus overtime wages for the remaining 80 hours. However, Plaintiff claims that the City does not pay its System Members the 40 hours of normal firefighter pay (Base Pay); it only pays them the 120 hours of deployment wages (which includes 80 hours of overtime). In other words, for five days of federal deployment, a deployed firefighter in the City of Virginia Beach currently receives more than three times his normal pay. But Plaintiff argues that he and other System Members should receive more than four times their normal pay in the future during federal deployment even though they do not provide services to the City while deployed.

Plaintiff's complaint does not identify any provision of 44 C.F.R. Part 208 that expressly requires Sponsoring Agencies to compensate Activated System Members with Base Pay during Activations. Instead, Plaintiff argues that such was the express intent of FEMA and the DHS in promulgating such regulation. Id. ¶ 18. In support, his complaint cites to FEMA's "Supplementary Information" for the Proposed Interim Rule for the National Urban Search and Rescue Response System, which states, in relevant part:

> . . . System Members who are regularly employed by a Sponsoring Agency or
> Participating Agency retain their concurrent employment relationship with their

usual employers.  The maintenance of this concurrent employment relationship is a fundamental principle of the National US&R Response System, and dates from the inception of the System. We adopted the principle after consultations with the States, local governments and public safety employee organizations and we intend it to prevent System Members from suffering a break in their service to the usual employer while away on the Federal deployment. While on a Federal deployment, these System Members receive pay and benefits from their usual employers during the Federal deployment just as they would if they were not Activated.

70 FR 9182-01, 9184 (Feb. 25, 2005); see Compl. ¶¶ 17–19, 36 (quoting excerpts of same).

Based on the above, Plaintiff claims that the City has been "wrongfully withholding pay" in violation of 44 C.F.R. Part 208, id. ¶ 36, and asks the Court to enter "a judgment declaring Plaintiff's right, as enumerated by 44. C.F.R. Part 208, to pay for his service with the System, separate and apart from his pay for his regular deployment with [the City], which is to be paid by [the City], whom shall be reimbursed for such personnel costs pursuant to 44 C.F.R. Part 208[.]" Compl. at 12.  Plaintiff also seeks an award of costs and attorneys' fees. Id.

## IV.   DISCUSSION

In its Motion, the City argues that Plaintiff's action should be dismissed pursuant to Rule 12(b)(1) because Plaintiff's complaint does not sufficiently plead an independent basis for this Court's subject matter jurisdiction.  Mem., ECF No. 6, at 6.  In support, Plaintiff argues that neither 44 C.F.R. Part 208 nor its enabling statute, the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. § 5121 et seq. (1988), creates a private right of action for Plaintiff, and therefore this Court does not have jurisdiction to adjudicate Plaintiff's alleged entitlements thereunder.  For the reasons below, the Court agrees.

As an initial matter, Plaintiff does not dispute that neither 44 C.F.R. Part 208 nor its enabling statute, the Stafford Act, creates a private right of action for private citizens.[3]  Instead,

---

[3] As the City notes in its brief, several courts have held that the Stafford Act creates no private right of action at all. See, e.g., People's Workshop, Inc. v. Fed. Emergency Mgmt. Agency, No. CV 17-107, 2018 WL 1532196, at *6 (M.D. La. Mar. 28, 2018); In re Katrina Canal Breaches Consol. Litig., No. 06-6099,

Plaintiff argues that the absence of an independent cause of action is immaterial to whether the Court has jurisdiction to hear this dispute. ECF No. 7 at 4. He claims that "[a]s long as a plaintiff's claim involves a material and non-frivolous question of federal law, federal courts have jurisdiction over it under Section 1331." Id. In support of this position, Plaintiff relies on the Supreme Court's decision in Verizon Maryland, Inc. v. Public Service Commission of Maryland, 535 U.S. 635 (2002), which held that the district court had federal question jurisdiction over Verizon Maryland's complaint for declaratory judgment to determine whether the Federal Communication Commission's ("FCC's") order requiring Verizon Maryland to make certain payments violated the Telecommunications Act. In that case, the FCC argued that, because such Act does not create a private cause of action to challenge the FCC order, the court lacked jurisdiction to hear the suit. Id. at 642. The Supreme Court rejected that argument, reasoning: "It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case." Id. at 642–43 (quoting Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 89 (1998) (emphasis in original)).

> [T]he district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another," unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."

---

2008 WL 2186400, at *5 (E.D. La. May 27, 2008) (citing Armstead v. Nagin, Civ. No. 05-6438, 2006 WL 3861769, at *1 (E.D .La. Dec. 29, 2006)) , aff'd sub nom. In re Katrina Canal Breaches Litig., 351 F. App'x 938 (5th Cir. 2009). And courts that have recognized a cause of action under the Act have only done so with respect to actions against the federal government. See, e.g., State of Hawaii ex rel. Atty. Gen. v. Fed. Emergency Mgmt. Agency, 294 F.3d 1152, 1158 (9th Cir. 2002); Graham v. Fed. Emergency Mgmt. Agency, 149 F.3d 997, 1003 (9th Cir.1998), abrogated on other grounds by Levin v. Commerce Energy, Inc., 560 U.S. 413 (2010).

Id. at 643 (quoting Steel, 523 U.S. at 89 (internal citations omitted)). Accordingly, Plaintiff argues that, because he alleges an actual and ongoing controversy with the City about whether 44 C.F.R. Part 208 requires the City to pay System Members both their Base Pay and Activation pay for the first 40 hours of their federal deployment, his complaint raises a non-frivolous question of federal law that is proper for this Court's adjudication under Section 1331.

However, the Court finds that Plaintiff's reliance on Verizon Maryland is misplaced. In both Verizon Maryland and Steel, the case on which Verizon Maryland relied, the complaints at issue involved non-frivolous claims that the petitioner had a *right to relief* under federal law. Verizon Maryland, 535 U.S. at 643; Steel, 523 at 89. Here, by contrast, Plaintiff's complaint has not set forth any theory of federal law under which the Plaintiff may have a right to recover damages (or any other remedy) against the City. Nor does Plaintiff's complaint set forth any plausible theory of recovery under federal law that the City could affirmatively assert against Plaintiff. As stated above, for a declaratory judgment action to arise under federal law for purposes of federal question jurisdiction, a complaint must do one or the other. Drain, 237 F.3d at 370. Plaintiff's complaint does neither.

To the extent Plaintiff argues that his alleged right to relief against the City in this case is to have this Court declare what 44 C.F.R. Part 208 requires of the City with respect to his compensation, this argument is also unavailing. The Declaratory Judgment Act "does not provide a source of jurisdiction which is independent of substantive federal law." Gibraltar, P.R., Inc. v. Otoki Grp., Inc., 104 F.3d 616, 619 (4th Cir. 1997) (internal citation omitted); see also Clear Sky Car Wash, LLC v. City of Chesapeake, Va., 910 F. Supp. 2d 861, 871 n.8 (E.D. Va. 2012), aff'd, 743 F.3d 438 (4th Cir. 2014) ("[T]he Court must have before it a properly pled claim over which it has an independent basis for exercising original jurisdiction before it may act

pursuant to the Declaratory Judgment Act."). "Accordingly, mere invocation of the Declaratory Judgment Act cannot confer 'arising under' jurisdiction under 28 U.S.C. § 1331." Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc., 86 F. Supp. 3d 464, 470 (E.D. Va.), aff'd sub nom. Campbell v. Am. Int'l Grp., Inc., 616 F. App'x 74 (4th Cir. 2015). Nor does Section 1331 confer jurisdiction on this Court to interpret federal laws and regulations for their own sake. Cf. Healthtek Sols., Inc. v. Fortis Benefits Ins. Co., 274 F. Supp. 2d 767, 774 (E.D. Va. 2003) ("[A] plaintiff's claim of a violation of federal statute does not create federal jurisdiction unless the plaintiff could avail himself of the remedies provided by the federal statute.").

Here, Plaintiff is asking the Court to enter a declaratory judgment that would give him and others similarly situated a future right to relief against the City that does not otherwise exist under federal law. This is in improper use of the Declaratory Judgment Act. Because Plaintiff's complaint does not allege any independent right to relief under federal law, the well-pleaded complaint rule requires that this Court dismiss the action for lack of subject matter jurisdiction.

Even so, Plaintiff and similarly-situated City firefighters are not without recourse. They can petition the local City Council to change to their pay structure during Activations, which Plaintiff argues would be a win for them and cost-neutral to the City. But the Court does not have jurisdiction to adjudicate Plaintiff's claims as pled.

## V.  CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss is hereby **GRANTED,** and Plaintiff's action is **DIMISSED WITHOUT PREJUDICE**. ECF No. 5.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED**.

Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA    Oct. 24, 2018